UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| GERALDINE EDWARDS,          ) | |
| ) | |
| Plaintiff,          ) | |
| vs.                                  ) | 1:05-cv-064-SEB-VSS |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration,    ) | |
| ) | |
| Defendant.          ) | |

**Entry Discussing Complaint for Judicial Review**

Geraldine Edwards ("Edwards") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I.  BACKGROUND**

Edwards filed an application for DIB on October 10, 2000, alleging an onset date of disability of July 11, 1997. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 22, 2002.  At the hearing, Edwards amended her onset date to September 21, 1999.  A supplemental hearing was held on November 5, 2003. Edwards was present, accompanied by her attorney.  Medical and other records were introduced into evidence, and Edwards, two medical experts, and a vocational expert ("VE") testified at the hearing. The ALJ issued a decision on January 15, 2004, denying benefits. On November 19, 2004, the Appeals Council denied Edwards' request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Edwards had not engaged in substantial gainful activity since July 11, 1997, and she was insured for DIB on that date and thereafter through March 31, 2003; (2) the medical evidence established that Edwards had "severe" impairments consisting of obesity and diabetes, but she did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments; (3) Edwards' testimony and statements about the intensity, persistence and limiting effects of her symptoms were inconsistent with the medical and other evidence, and were not fully credible; (4) Edwards had the residual functional capacity ("RFC") for a full range of light work; (5) Edwards' RFC required no task inconsistent with her past relevant work as a laundry attendant and she was not disabled at step four; and (6) Edwards was a "younger individual" on her alleged onset date, and at the time of the ALJ's decision she was "closely approaching advanced age," she had a high school education, but no transferable work skills. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Edwards was not disabled.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been

defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

The ALJ found that although Edwards had "severe" impairments consisting of obesity and diabetes, she could perform her past relevant work as a laundry attendant.

Edwards first argues that the ALJ erred in finding that her diabetes did not satisfy the elements of Listing 9.08A. The ALJ stated:

> The claimant, however, does not satisfy step three. Contradicting Dr. Heathers, a treating physician, Dr. Stump testified her diabetes does not rise to the level of impairment set forth in section 9.08 of the Listing of Impairments ("Listings"). This was also the finding of the State Agency physicians. Dr. Heathers' opinion is not supported by the totality of the medical evidence of record. Further, the claimant has no impairment or combination of impairments which meet or equal in severity all of the criteria of any other impairment contained in the Listings.

(R. at 28).

Listing 9.08A requires :

> Diabetes mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 9.08A.

Pursuant to 11.00C, "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances...frequently provides the sole or partial basis for decision in cases of neurological impairment." *Id.* at 11.00C.

Edwards contends that she satisfied the criteria of Listing 9.08 based on findings made by her treating physician, Dr. Heathers, that Edwards had hand numbness and was limited in fine manipulations and pushing and pulling and reaching above the shoulder level. The ALJ, however, properly relied on the opinions of the State Agency physicians and the medical expert who testified at the hearing in finding that the record, including Dr. Heathers' reports, did not support a conclusion that Edwards' diabetes satisfied the criteria

of the Listing.  The ALJ adequately discussed Listing 9.08 to permit judicial review. There is no medical opinion of record indicating that Edwards' impairments met or equaled Listing 9.08. The ALJ's determination at step three is supported by substantial evidence.

Edwards next argues that the ALJ erred in finding that her visual impairment, mental impairment, neuropathic pain and headaches did not constitute severe impairments. As far as her visual impairments are concerned, this contention is well taken. To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  The ALJ discussed the fact that Edwards' visual disturbances fluctuated, ranging from normal to near normal to poor (20/200 or 20/300). (R. at 20). Consulting examining ophthalmologist Dr. Kruse noted visual fluctuations which may be related to fluctuations in her blood sugar but he later suspected, based on the fact that she was working on getting disability and the lack of ocular pathology to account for her decreased vision, that her decreased vision was "functional in nature." (R. at 30, 410, 416). Dr. Kruse continued to report, however, seven months later, that Edwards' vision was 20/300 in the right eye and 20/200 in the left eye with correction, and that the recommended treatment was to keep blood sugars under control. (R. at 417-18). The ALJ noted that the medical expert ophthalmologist, Dr. Kenney, testified that Edwards' visual disturbances could be caused by fluctuating blood sugar levels. (R. at 20). Dr. Kenney testified that Edwards would be limited in the areas of climbing, doing small object work, reading and writing due to the fluctuation in vision. (R. at 106-08). Another medical expert also testified that "there ain't no doubt" that Edwards' blood sugar fluctuations played a big part in her visual problems. (R. at 111). Treating physician Dr. Heathers noted Edwards' fluctuating blood sugar levels and visual disturbances when he opined that Edwards would be unreliable and unsafe in any job that required reading fine print or prolonged reading. (R. at 30). The ALJ concluded that Edwards' visual disturbances were "subjective," a term used by treating physician Dr. Heathers and which Dr.  Kenney explained meant that there was an "emotional aspect" to the vision problem. (R. at 30, 105).  The State Agency physicians opined that Edwards did not have a visual impairment, however, that opinion was based on a notation of "normal acuity," (R. at 198), a finding which is not supported by substantial evidence.

The Commissioner argues that any error in not finding the vision problem "severe" was accommodated by the fact that in one hypothetical question posed to the VE, the ALJ excluded jobs that would require reading, writing or close-up work as described by the physician at the hearing.  (R. at 120-21).  This is not persuasive, however, because the VE testified that there would be some jobs that Edwards could do "if the vision has been fairly stable and she just can't work with small, small parts." (R. at 121). The physician, Dr. Kenney, had testified that Edwards would be restricted in more ways than not working with small parts. (R. at 106-08). The hypothetical was that Edwards could not read, write, or do work of a close nature. To this extent, the VE altered the hypothetical from that given by the ALJ. The VE's testimony would not constitute substantial evidence supporting the finding suggested by the Commissioner. The ALJ further clarified the VE's testimony to mean that if Edwards' visual fluctuations were frequent, then there would be no jobs that Edwards could perform. (R. at 121-122). In sum, the ALJ's implicit finding that Edwards' visual impairment was not severe is not supported by substantial evidence.

4

Edwards also argues that the ALJ improperly gave "no weight" to the more recent opinions of treating physician Dr. Heathers that Edwards could not perform sedentary work. (R. at 424-29, 431, 433).  The ALJ discredited all of Dr. Heathers' findings because the ALJ concluded that Dr. Heathers had "contradicted himself numerous times" and had rendered "conflicting opinions." (R. at 30, 31). The ALJ's examples of such contradictions, however, reflect fluctuations in the severity of Edwards' symptoms and Dr. Heathers' corresponding opinions. The record is undisputed that Edwards' diabetes was not well controlled and that her symptoms fluctuated accordingly. The fact that Dr. Heathers' opinions of Edwards' ability to function varied over time, indicating improvements and declines, without more, does not support a finding that his opinions were "conflicting."  The ALJ's rationale for giving "no weight" to Dr. Heathers' opinion is not supported by substantial evidence. This is not to say, however, that the ALJ must accept Dr. Heathers' opinion that Edwards was disabled. A treating physician's statement that a claimant is disabled or cannot work is not conclusive. The ultimate determination of whether a claimant is disabled is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'").

Edwards also argues that the ALJ improperly rejected the State Agency physicians' RFC assessments to the extent that they included postural limitations.  (R. at 31, 197) (Edwards was limited to occasional climbing, balancing, stooping, kneeling, crouching, crawling). The ALJ opined that the postural limitations were not supported in the record as a whole.  (R. at 31). To the contrary, treating physician Dr. Heathers opined that Edwards should not push, pull, kneel, bend or stoop. (R. at 552, 601). More importantly, the ALJ did not rely on any medical source in rejecting those restrictions. His conclusion indicates that he impermissibly substituted his own medical conclusions for the uncontroverted opinion of the State Agency physicians. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Accordingly, the ALJ's finding that Edwards could perform the full range of light work is not supported by substantial evidence.

The ALJ determined that Edwards was not credible.  In support of that finding, the ALJ cited several specific allegations of extreme symptoms, that her hands and feet felt cold all of the time and were constantly painful, her fingers and heels cracked open, and she had sores under her arms that resisted healing.  (R. at 29-30). The ALJ reasoned that there was no objective medical evidence which supported these symptoms, no reliable findings of neurological or vascular deficits, no clinical observation of cracked or bleeding hands, toes or feet, and no evidence of discoloration or temperature changes in her skin. (R. at 30).  Dr. Stump testified that the complaints about her feet and the cold hands and loss of sensation could be symptoms of diabetes and neuropathy. (R. at 119-120). An ALJ may not disregard complaints merely because they are not fully supported by objective medical evidence. *Knight v. Chater,* 55 F.3d 309, 314 (7th Cir.1995). The absence of objective medical evidence is just one factor to be evaluated in determining a claimant's

5

credibility. In light of the fact that on remand the ALJ will have to reconsider and evaluate the evidence as a whole, a re-evaluation of Edwards' credibility will also be appropriate.

### III.  CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.


Date: 11/29/2006

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana